# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Joshua Jon Carlson, | Case No. 20-CV-1676 (WMW/HB) |
| Plaintiff, | |
| v. | **ORDER AND**<br>**REPORT AND RECOMMENDATION** |
| Paul Schnell, William Bolin, Kris Rush, Crystal Hansen, Darryl Goebel, and Chad Clough, | |
| Defendants. | |

---

This matter comes before the Court for three reasons. First, Plaintiff Joshua Jon Carlson did not pay this action's filing fee, but instead filed an application seeking leave to proceed *in forma pauperis* ("IFP Application") [Doc. No. 2]. Second, on or about August 11, 2020, Carlson submitted two letters, one of which was marked "Only for the Judge's eyes"; a proposed stipulation; and several exhibits (collectively, the "August 11 Materials"). Third, on August 12, 2020, Carlson filed a motion seeking an "Immediate . . . Temporary Restraining Order" ("TRO Motion") [Doc. No. 9].[1] For the following reasons, the Court orders Carlson to pay an initial partial filing fee, orders Carlson to advise the Court what to do with the August 11 Mailings, and recommends that the TRO Motion be denied.

---

[1] Citations to specific pages in Court filings use the page numbers provided by the Court's CM/ECF filing system.

## I.    IFP APPLICATION

Because Carlson is a prisoner, the IFP Application is subject to 28 U.S.C. § 1915(b).

This statute provides that:

> (1)    Notwithstanding subsection (a), if a prisoner brings a civil action . . . in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee.  The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of—
>
>> (A)    the average monthly deposits to the prisoner's account; or
>>
>> (B)    the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint . . . .
>
> (2)    After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.  The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.
>
> (3)    In no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a civil action . . . .
>
> (4)    In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.

According to this statute, which is part of the Prison Litigation Reform Act

("PLRA"), prisoners granted IFP status are *not* excused from paying the court filing fee

altogether, as is the case for nonprisoner IFP litigants.  Instead, a prisoner who is granted

IFP status is merely granted permission to pay the filing fee in installments, rather than paying the entire amount in advance. *See Ashley v. Dilworth*, 147 F.3d 715, 716 (8th Cir. 1998) ("The purpose of the [PLRA] was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period of time."). Section 1915(b)(1) requires prisoner IFP applicants to pay an initial partial filing fee at a case's outset, and § 1915(b)(2) requires that the prisoner pay the remaining balance in installments through regular deductions from his or her trust account.

In this case, Carlson's trust-account statement shows that the amount of his average monthly deposits during the preceding six-month period was $70.55, while his average balance during the same period was $25.17. (IFP Appl. 7.) Because the deposits amount exceeds the balance amount, Carlson's initial partial filing fee in this case, under the § 1915(b)(1) formula, will be 20% of the average deposits amount, or $14.11. This action will not go forward until Carlson's initial partial filing fee of $14.11 has been paid in full. Carlson should be aware that, if he pays this fee, the Court will then screen the Complaint to determine if it is frivolous, malicious, or fails to state a claim on which relief may be granted. See 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A.

If Carlson elects to pursue this action by paying the $14.11 initial partial filing fee, **he will have to pay, in later installments, the entirety of the remaining balance of the $350.00 statutory filing fee**.[2] The Court will order prison officials to deduct funds from

---

[2] The statutory filing fee for new actions commenced in a federal district court is $350.00. *See* 28 U.S.C. § 1914(a). On May 1, 2013, the district courts began to assess an

3

Carlson's trust account and submit them to the Court, as § 1915(b)(2) provides, regardless of whether Carlson succeeds in this action.[3]  If Carlson does not pay his initial partial filing fee within 20 days of this Order's date, the Court will deem him to have abandoned this action and will recommend dismissing this action without prejudice for lack of prosecution.  *See* Fed. R. Civ. P. 41(b).

## II.    AUGUST 11 MATERIALS

Carlson marked one of the letters submitted on or about August 11th "Only for the Judge's eyes," suggesting that he meant for some or all of the August 11 Materials to be reviewed only by the Court and not, presumably, by the Defendants.  The August 11 Materials also include a one-page letter dated August 9, 2020; a proposed stipulation signed only by Carlson; 20 pages of exhibits; and three envelopes.  At this stage of the

---

additional $50.00 administrative fee, raising the total fee to $400.00.  The PLRA, however, applies only to the statutory filing fee.  Thus, Carlson will have to pay the unpaid balance of the $350.00 statutory filing fee—not the $400.00 total fee—in installments under § 1915(b)(2).

[3]  Carlson, if he proceeds with this action, will have to pay the entire filing fee whether or not he prevails.  The Court warns Carlson that it has perceived fundamental problems with the present Complaint [Doc. No. 1].  The Complaint's factual allegations primarily consist of lettered paragraphs in which Carlson refers to Court to various other documents.  (*See, e.g.*, Compl. 11 (referring to exhibits); Doc. No. 1-2 (70 pages of exhibits); Doc. No. 8 (45 additional pages of exhibits).  The Federal Rules of Civil Procedure state that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(1).  The Complaint does not meet this requirement; thus, if Carlson proceeds with this action by paying the first installment of the filing fee, this Court will almost certainly order him to file an amended complaint as the first step in this action going forward.  Assuming the Court requires Carlson to file an amended complaint, and that he does so, that document may also have substantive problems leading to an early dismissal.  Carlson should keep these points in mind as he decides on a course of action.

case, the Court is not willing to review and consider materials submitted by Carlson that he appears to want withheld not only from the public generally but even from Defendants (assuming for the sake of argument that this case proceeds and Defendants are served).

Carlson thus needs to decide what he would like the Court to do with the August 11 Materials. There are three options: the Court can (1) return the August 11 Materials to Carlson, (2) discard them, or (3) file them as part of the record in this case. If Carlson elects to have the Court file the August 11 Materials and if he believes that one or more of these documents should be sealed (so that they are not available to members of the public), he should file a letter clearly stating that and specifying which of these documents should be sealed and why. Carlson should understand, however, that if he chooses to ask that any of the August 11 Materials be filed under seal, the Court will require at the very least that counsel for Defendants be given access to them, and may at some point in the future conclude that they must be unsealed.[4] Furthermore, even if he elects to file them at this time, the Court will not consider them as part of the current Complaint nor as part of any amended complaint Carlson may file in the future. In other words, the Court will consider the sufficiency of the current Complaint and of any amended complaint Carlson may someday file on the basis of the allegations contained within the Complaint or amended complaint itself, not on the basis of additional allegations that may be included in the August 11 Materials or other separate documents filed with the Court.

---

[4] If Carlson wishes to file documents under seal in connection with motions that he may file in the future, he must comply with District of Minnesota Local Rule 5.6.

## III.    TRO MOTION

In the TRO Motion, Carlson asks the Court to issue harassment restraining orders against all Defendants, asserting a problematic "pattern of conduct" concerning Carlson's submission of "kites" and/or grievances within MCF–Moose Lake.  (TRO Mot. 1–2.)

For at least two reasons, the Court recommends denying the TRO Motion.  The first is procedural.  Under Federal Rule of Civil Procedure 65(b)(1)(B), a court may issue a TRO without notice to the adverse party only if the movant, among other things, "certifies in writing any efforts made to give notice and the reasons why it should not be required."  There is no indication that Defendants have notice of Carlson's TRO request, and Carlson has not certified his efforts to give notice or reasons why notice ought not be required.  The TRO Motion thus fails to satisfy Rule 65(b)(1)(B).

Furthermore, even if the TRO Motion complied with Rule 65(b)(1)(B), the Court would still recommend denial on substantive grounds.  In the Eighth Circuit, courts assess TRO requests by weighing the following factors: "(1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between that harm and the harm injunctive relief would cause to the other litigants; and (4) the public interest."  *3M Co. v. Starsiak*, No. 20-CV-1314 (SRN/TNL), 2020 WL 3566718, at *6 (D. Minn. June 26, 2020) (citing *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)); *see also Goyette v. City of Minneapolis*, No. 20-CV-1302 (WMW/DTS), 2020 WL 3056705, at *3 (D. Minn. June 9, 2020) (same).  The movant bears the burden of showing that these factors favor a TRO.  *Starsiak*, 2020 WL 3566718, at *6 (citing *Watkins Inc. v. Lewis*, 346 F.3d 841, 844

(8th Cir. 2003)); *Goyette*, 2020 WL 3056705, at *3 (same).  The TRO Motion contains

no substantive discussion of the *Dataphase* factors, and so Carlson has failed to show that

they weigh in favor of a TRO here.  As a result, even if the TRO Motion complied with

the applicable procedural rule—which it does not—the Court would still recommend

denying it.

 

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY ORDERED THAT**:

1.    Plaintiff Joshua Jon Carlson must pay an initial partial filing fee of at
least $14.11 **within 20 days** of this Order's date.

2.    Should Carlson fail to pay the initial partial filing fee, the Court will
recommend dismissing this action without prejudice for failure to
prosecute.

3.    Carlson has **14 days** from this Order's date to file a letter advising
the Court whether the Court should (1) return to Carlson the
materials he submitted on August 11, 2020; (2) discard those
materials, or (3) file those materials in this action's docket.  If
Carlson elects the third option and believes some or all of those
materials should be sealed, his letter must state specifically which of
the materials should be sealed and why they should be sealed.

 

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT** Plaintiff Joshua Jon Carlson's Motion for

Immediate Temporary Restraining Order [Doc. No. 9] be **DENIED**.

 

Dated:  August 18, 2020                    s/ *Hildy Bowbeer*
                                          HILDY BOWBEER
                                          United States Magistrate Judge

## NOTICE

The Report and Recommendation section is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).